UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RONNIE LEE BROWN,

      Plaintiff,

v.                                    Case No:  6:14-cv-2051-Orl-41TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

Plaintiff Ronnie Lee Brown brings this action for judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration, denying his applications for a period of disability, disability insurance benefits, and supplemental security income.   Following a review of the administrative record and the joint memorandum submitted by the parties, and for the reasons that follow, I respectfully recommend that the Commissioner's final decision be **AFFIRMED**.

## I. Background

Plaintiff filed his applications for benefits on December 28, 2011, alleging that he has been disabled since April 1, 2009 (Tr. 11, 187-99).   His claims were denied initially and on reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ").   The administrative hearing was held on March 12, 2014, at which time Plaintiff, represented by counsel, appeared and testified, as did a vocational expert (Tr. 27).   The hearing was held by video teleconference with Plaintiff and his attorney appearing in Port Orange, Florida, with the ALJ sitting in Jacksonville, Florida (Tr. 11, 29). In a decision dated April 25, 2014, the ALJ concluded that Plaintiff was not disabled from

April 1, 2009, through the date of the decision (Tr. 11-22).   The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined review on October 31, 2014 (Tr. 1-3).

Plaintiff was 49 years of age on the date of the ALJ's decision (Tr. 22, 187).   He has a limited education, is able to communicate in English, and has past relevant work as a cook (Tr. 20).   He is insured for disability insurance purposes through March 31, 2016 (Tr. 13).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process that appears in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).   The ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.   See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).   The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner.   Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability date (Tr. 13).   Next, the ALJ found that Plaintiff's severe impairments consist of "coronary artery disease s/p myocardial infarction with pacemaker; hypertension; obstructive sleep apnea; chronic obstructive pulmonary disease; diabetes mellitus; history of deep vein thrombosis; history of congestive heart failure; and degenerative changes in the hips, bilaterally; and degenerative changes of

the spine." (Tr. 14). The ALJ decided that Plaintiff's impairments do not meet or equal

a listed impairment and leave him with the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except with no climbing of ladders, ropes, or scaffolds; no more than
> occasional climbing of ramps or stairs, stooping, kneeling, crouching, and
> crawling. He must avoid concentrated exposure to environmental irritants
> (fumes, odors, dust, and gases) and poorly ventilated areas; and must avoid
> even moderate exposure to moving machinery and exposure to unprotected
> heights.

(Tr. 14-15). Although this RFC precludes the performance of Plaintiff's past relevant

work, the ALJ relied on the testimony of the vocational expert to find that Plaintiff is

nevertheless able to perform a significant number of jobs in the national economy,

including such representative jobs as charge account clerk, document preparer, and final

assembler (Tr. 20-21). Based upon these findings, the ALJ concluded that Plaintiff was

not disabled within the meaning of the Social Security Act from April 1, 2009, through the

date of the administrative decision (Tr. 22).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the

Commissioner applied the correct legal standards and whether the Commissioner's

findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363

F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if

supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more

than a scintilla but less than a preponderance. It is such relevant evidence that a

reasonable person would accept as adequate to support a conclusion." Winschel v.

Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the

district court will affirm even if the reviewer would have reached a contrary result as finder

of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

Plaintiff argues that the ALJ failed to apply the correct legal standard to his need for supplemental oxygen.   He also argues that the ALJ failed to account for his need to use supplemental oxygen in Plaintiff's RFC assessment and the ALJ's hypothetical question to the vocational expert (Doc. 15 at 21-22).   Plaintiff relies upon medical evidence documenting his use of supplemental oxygen and his own testimony that he used oxygen continuously every time he left his house for the previous two years (Id. at pp. 22-23).   Plaintiff alleges that the ALJ improperly rejected his need to use supplemental oxygen by "fail[ing] to apply the correct legal standards and ma[king] findings not supported by substantial evidence."   (Id. at p. 23).

The evidence shows that Plaintiff reported to the emergency department at Florida Hospital on May 23, 2012, complaining of shortness of breath and chest pain (Tr. 497). He was evaluated by the hematology, cardiology, urology, and gastrointestinal departments and found to have a pulmonary embolism (Id.).   Plaintiff was discharged on June 1, 2012 on the following medications: Rosuvastatin, Amlodipine, Lisinopril and

Sucralfate (Tr. 498).   He was also "to be on home oxygen since he qualified on ambulating."   (Id.).

Plaintiff went to the emergency department at Halifax Health on August 5, 2012, complaining of chest pain (Tr. 531).   A doctor ordered oxygen administration at 9:18 p.m. Plaintiff's pulse oximetry readings ranged from 88 to 97 percent on room air, and the reading was 96 percent with oxygen delivered by nasal cannula (Tr. 529, 533).   Plaintiff was discharged the following day.

On October 25, 2012, Plaintiff appeared at the Florida Hospital Memorial Medical Center complaining of chest pain and shortness of breath after he got into a discussion with police (Tr. 579-80).   He was started on oxygen, and had an oxygen saturation of "90 to 92 on 2 L."   (Tr. 580).   He was discharged the following day with directions for activity as tolerated (Tr. 577-78).

Plaintiff was admitted to Florida Hospital Memorial Medical Center on December 5, 2012 due to chest pain and low back pain (Tr. 557).   He had a cardiac consultation for his chest pain, a pulmonary consultation to evaluate chronic obstructive pulmonary disease and obstructive sleep apnea, a hematology consultation for his past pulmonary embolism, his pacemaker was interrogated, and he was consulted for a sleep study (Id.). According to the admission documents, Plaintiff had an "oxygen level 97% on 3 L nasal cannula."   (Tr. 560).

A hospital consultation report made the next day (December 6, 2012), notes that Plaintiff "uses oxygen 3 liter nasal cannula" and states that Plaintiff would be placed on "oxygen 3 L nasal cannula."   (Tr. 564-65).   He was discharged on December 13, 2012, with instructions to resume activities as tolerated; eat a diet of low sodium, low fat, low cholesterol, and diabetic control carbohydrates; and to follow up with a sleep study, on his

chronic obstructive pulmonary disease, and with his primary care provider (Tr. 558). Oxygen was not mentioned in Plaintiff's discharge instructions or list of medications (Tr. 558, 560).

Plaintiff returned to the emergency department at Halifax Health on September 25, 2013 complaining of chest pain.   His pulse oximetry reading was 95 percent on room air at 6:15 p.m. (Tr. 512).   At 6:27 p.m., a physician ordered oxygen administration (Tr. 518, 523), and from 6:30 p.m. to 7:39 p.m., Plaintiff's pulse oximetry reading fluctuated between 95 and 97 on 2 liters of oxygen by nasal cannula (Tr. 512, 517, 523).   Readings at 10:00 p.m. and midnight were 97 and 98, with no indication that Plaintiff was still receiving oxygen (Tr. 512).

Plaintiff went to the emergency department on January 10, 2014 complaining about "difficulty breathing and abdominal swelling," as well as "left-sided tingling and weakness."   (Tr. 540).   On admission, his "O2 saturation [was] 92%."   (Tr. 542). Plaintiff was given oxygen and it was noted that he "is on home O2 as well."   (Tr. 540). The next day, Plaintiff's oxygen saturation was 98 percent on three liters of oxygen per minute by nasal cannula (Tr. 546).   He was discharged on January 16, 2014, with orders for "wheelchair, walker, and home oxygen."   (Tr. 590 (emphasis omitted)).

Plaintiff testified at the administrative hearing that he was prescribed oxygen for home use in January 2014 and two years prior to the hearing (Tr. 38-39).   He also testified that he has continuously used oxygen every time he leaves the house for the previous two years (Tr. 39).   Plaintiff said he does not leave his home without using portable oxygen because he is "dysfunctional" after 15 or 20 minutes without oxygen, passes out, and has to go to the hospital (Tr. 38).

An RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1545(a)).   See also Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) ("[T]he ALJ will 'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case.").   The RFC represents the most, not the least, a claimant can do despite his impairments.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is an administrative finding of fact reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(2), (d)(3), (e)(2); Shaw v. Astrue, 392 F. App'x 684, 687 (11th Cir. 2010).

In formulating Plaintiff's RFC, the ALJ evaluated the medical evidence, the medical opinions of record, and Plaintiff's testimony (Tr. 14-20).   The ALJ made note of Plaintiff's testimony that he uses oxygen at home and "has been using portable oxygen every time he leaves the house since two years prior to his hearing."   (Tr. 15).   The ALJ also recognized that Plaintiff was placed on oxygen while hospitalized and was prescribed home oxygen, a wheelchair, and walker when he was discharged from the hospital on January 16, 2014 (Tr. 18-19).   But, the ALJ observed that "[t]here is no indication … how much oxygen the claimant needed and when.   In fact, the claimant's hospital discharge instructions indicated he could resume activities as tolerated, with no permanent restrictions notes."   (Tr. 19).   These findings by the ALJ are supported by substantial record evidence.

While Plaintiff argues that the "medical evidence of record documents that [he] has been using supplemental oxygen for years," virtually all the medical evidence shows that he received supplemental oxygen after being hospitalized for chest pain (Doc. 15 at 22; Tr. 518, 523, 529, 533, 540, 580).   It is true that Plaintiff was given "home oxygen" at

discharge on two occasions but, there is no indication how much or when oxygen was needed, and there are no medical opinions that Plaintiff is limited due to his use of oxygen (Tr. 498, 590).

Plaintiff argues that his own testimony is sufficient to support a finding that the use of home oxygen should have been included in his RFC assessment (Tr. 23).   But, the ALJ discounted Plaintiff's testimony as being "not entirely credible" and Plaintiff has not challenged that determination (Tr. 16-20).   Therefore, I conclude that the ALJ did not err in failing to include a limitation for the use of oxygen in Plaintiff's RFC assessment.

Based upon this finding, I also conclude that the ALJ did not error in failing to account for the use of supplemental oxygen in the hypothetical question posed to the vocational expert.   See Bellew v. Acting Com'r of Soc. Sec., 605 F. App'x 917, 931 (11th Cir. 2015); Gordon v. Astrue, 249 F. App'x 810, 812-13 (11th Cir. 2007) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.   Importantly, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.") (internal citations omitted).

Plaintiff's second argument is that the holding of his administrative hearing by video teleconference violated his right to procedural due process and the Commissioner's regulations (Doc. 15 at 11, 16-17).   On July 19, 2012, Plaintiff requested a *de novo* hearing before the ALJ (Tr. 136-37).   The Office of Disability Adjudication and Review ("ODAR") in Jacksonville, Florida mailed Plaintiff letters dated August 3 and August 8, 2012, to "explain[] the hearing process and things that [Plaintiff] should do … to get ready for [the] hearing."   (Tr. 138-52).   The letters stated that a "Notice of Hearing" would be mailed to Plaintiff at least 20 days before the hearing to inform him of the time and place

of the hearing and that they "may offer the option of holding [the] hearing by video conference rather than in person."   (Tr. 138).

On December 9, 2013, Plaintiff's attorney sent a letter to the ODAR Hearing Office Manager in Jacksonville, Florida, "to request that the administrative hearing in this case be held in the Orlando Office of Disability Adjudication and Review."   (Tr. 155-56).   The letter explained that Plaintiff "lives in Volusia County, is disabled, … has difficulty travelling long distances[, and] [t]he Orlando ODAR is closer to the claimant's home than the Jacksonville ODAR."   (Tr. 155).   Plaintiff's attorney also stated that the Jacksonville ODAR takes longer to process cases and "[t]he video set up in Port Orange is not conductive to a fair hearing."   (Id.).   He wrote that "[i]t is difficult to see the Judge on the small monitor, and often impossible to see the expert witness.   The hearing room is so small that it is not possible to have the claimant, representative, and a witness sitting in the same hearing."   (Id.).   Plaintiff requested the Hearing Office Manager "please schedule an in-person hearing at the Orlando ODAR office as soon as possible."   (Tr. 156).

On January 8, 2014, the ALJ issued a "Notice of Hearing" scheduling Plaintiff's hearing for March 12, 2014, at the Port Orange, Florida Office of the Social Security Administration (Tr. 157-69).   The notice informed Plaintiff that he would be appearing by video teleconference and that the ALJ would preside over the hearing from another location (Tr. 158).   A section of the notice titled "What To Do If You Do Not Want To Appear At Your Hearing By Video Teleconferencing (VTC)" stated:

> If you do not want to appear at your hearing by VTC, you must let me know at the earliest possible opportunity.   Please do this by returning the enclosed acknowledgment form and checking the block that says, "*I do not want to appear at my*

> *hearing by video teleconference.   Please reschedule my*
> *hearing so that I may appear in person.*"

> If you timely return the enclosed form, I will arrange an in-
> person hearing for you on the next available hearing date.
> However, asking me to reschedule your hearing so you can
> appear in person might delay your hearing.

(Tr. 158 (emphasis in original)).   Plaintiff's attorney signed and returned the

"Acknowledgment of Receipt (Notice of Hearing)" on February 3, 2014, indicating that

Plaintiff would "be present at the time and place shown on the Notice of Hearing."   (Tr.

180).   In other words, counsel did not ask the Commissioner to reschedule the hearing

so that Plaintiff could appear in-person.

    The Commissioner sent a "Notice of Hearing-Important Reminder" to Plaintiff on

February 26, 2014, to remind him of the time and place of the hearing (Tr. 181).   The

hearing was held on March 12, 2014 by video teleconference with Plaintiff and his

attorney appearing in Port Orange, Florida, and the ALJ sitting in Jacksonville, Florida (Tr.

11, 29).   At no time during the hearing did Plaintiff or his attorney object to the location of

the hearing or that it was being conducted by video conference (Tr. 27-68).

    When the administrative hearing was held and the ALJ's decision was issued, 20

C.F.R. §§ 404.936(e), (f) provided:

> (e) Good cause for changing the time or place.   If you have
> been scheduled to appear for your hearing by video
> teleconferencing and you notify us as provided in paragraph
> (d) of this section that you object to appearing in that way, the
> administrative law judge will find your wish not to appear by
> video teleconferencing to be a good reason for changing the
> time or place of your scheduled hearing and we will
> reschedule your hearing for a time and place at which you
> may make your appearance before the administrative law
> judge in person.   The administrative law judge will also find
> good cause for changing the time or place of your scheduled
> hearing, and we will reschedule your hearing, if your reason is

one of the following circumstances and is supported by the evidence:

(1) You or your representative are unable to attend or to travel to the scheduled hearing because of a serious physical or mental condition, incapacitating injury, or death in the family; or

(2) Severe weather conditions make it impossible to travel to the hearing.

(f) Good cause in other circumstances.   In determining whether good cause exists in circumstances other than those set out in paragraph (e) of this section, the administrative law judge will consider your reason for requesting the change, the facts supporting it, and the impact of the proposed change on the efficient administration of the hearing process.   Factors affecting the impact of the change include, but are not limited to, the effect on the processing of other scheduled hearings, delays which might occur in rescheduling your hearing, and whether any prior changes were granted to you.   Examples of such other circumstances, which you might give for requesting a change in the time or place of the hearing, include, but are not limited to, the following:

…

(5) Transportation is not readily available for you to travel to the hearing;

(6) You live closer to another hearing site; ….

20 C.F.R. §§ 404.936(e), (f) (effective July 29, 2013 to July 17, 2014).

Plaintiff argues that the ALJ violated these regulations and his right to procedural due process by holding the administrative hearing by video teleconference rather than in-person.[1]   I disagree.   Plaintiff's argument that he "had a right to attend a hearing at the

---

[1] Plaintiff also argues that several provisions in the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") were violated (Doc. 15, p. 15).   This section of Plaintiff's brief (and much of Plaintiff's argument regarding the use of a video teleconference) appears to be copied and pasted from another brief.   Plaintiff acknowledges that the Commissioner removed "many of the specific claimant protections from the HALLEX" in 2013 (Id. at p. 15 n. 6).   He then argues that the provisions "were in effect as of September 24, 2013, the date of the ALJ's decision in this case." (Id.).   But, the ALJ's decision is dated April 25, 2014, (Tr. 22), after the provisions were removed from the HALLEX.

hearing office nearest his home," and that he should have been scheduled for a hearing in Orlando, Florida is not well-taken (Doc. 15, p. 17).   Plaintiff requested that the hearing be held in Orlando because it is difficult for him to travel long distances and the "Orlando ODAR is closer to [his] home than the Jacksonville ODAR."   (Tr. 155).   In fact, the hearing location in Port Orange was closer to Plaintiff's Daytona Beach, Florida home than the hearing office in Orlando[2] (Doc. 1, ¶ 2; Tr. 1, 157, 181).   The Port Orange location also made for a shorter trip for Plaintiff's Daytona Beach, Florida attorney (Tr. 30).

One of Plaintiff's objections to appearing by video teleconference was that "[b]eing in the same room would certainly improve the ALJ's ability to determine Mr. Brown's credibility, elicit testimony from him, and evaluate his claim."   (Doc. 15, p. 17). However, Plaintiff has not challenged the ALJ's determination of his credibility.

Plaintiff failed to renew any of his objections before or during the video teleconference hearing.

Although Plaintiff objected that "[t]he video set up in Port Orange is not conductive to a fair hearing," he has not shown how or why his hearing was unfair (Tr. 155).   "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."   Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks omitted).   Plaintiff does not claim any denial of a meaningful hearing at a meaningful time.

---

[2] In making this determination, I have taken judicial notice of a map of central Florida.   See United States v. Proch, 637 F.3d 1262, 1266 (11th Cir. 2011) ("We take judicial notice of a map of Fort Walton Beach, Florida, which contains the addresses that were listed in the indictment.") (citing Gov't of the Canal Zone v. Burjan, 596 F.2d 690, 693-94 (5th Cir. 1979) (taking judicial notice of a map under Fed. R. Evid. 201)).

Plaintiff's request for an in-person hearing failed to comply with 20 C.F.R. § 404.936(e).   Section 404.936(e) provides that a claimant can object to appearing at a hearing by video teleconferencing "[i]f you have been scheduled to appear for your hearing by video teleconferencing[.]"   20 C.F.R. § 404.936(e).   Plaintiff requested an in-person hearing in Orlando, Florida before the ALJ noticed and scheduled the hearing by video teleconference.   After the first notice went out, Plaintiff never objected, and never told the ALJ that he did not want to appear by video teleconference in Port Orange, Florida.   To the contrary, Plaintiff informed the ALJ that he would be "present at the time and place shown on the Notice of Hearing."   Cf. Pittman v. Colvin, No. 3:12-CV-51-CDL, 2013 WL 4539674, at *2 (M.D. Ga. Aug. 27, 2013) (finding that the ALJ has discretion to deny a request to reschedule a hearing that does not comply with the requirements of 20 C.F.R. § 404.936(d)); Garcia v. Colvin, No. 14CV830-LAB DHB, 2015 WL 2384172, at *11 (S.D. Cal. May 18, 2015) ("The ALJ has discretion to deny an untimely request for an in-person hearing."); Evans v. Astrue, No. 4:08-CV-66, 2010 WL 276119, at *9 (E.D. Tenn. Jan. 15, 2010) ("Plaintiff was instructed on how to object properly to having a video teleconference but she did not do so, so I consider this objection waived.").

Finally, Plaintiff has not shown that his due process rights were violated because he has not shown, or even argued, that any prejudice resulted from the hearing being held by video teleconferencing.   Cf. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."); Gordon, 249 F. App'x at 813; Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985); Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981) (If there has been a waiver of right to counsel, claimant must

show "clear prejudice or unfairness" caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand to the Secretary.); Henry v. Colvin, 561 F. App'x 55, 57-58 (2d Cir. 2014) ("However, even assuming, without deciding, that the vocational expert's testimony by telephone was inconsistent with due process and SSA regulations as they existed at the time of Henry's 2009 remand hearing, the error was harmless.   The record shows that Henry's counsel stated no objection to the expert's testimony and suffered from no technical difficulties or time constraints that limited the effectiveness of his cross-examination, and on appeal Appellant alleges no specific prejudice.") (footnote omitted); Ford v. Astrue, No. 3:07-CV-835-J-TEM, 2009 WL 789895, at *3-6 (M.D. Fla. Mar. 23, 2009); Walker v. Comm'r of Soc. Sec., No. 12-2333 FLW, 2014 WL 1340053, at *8 (D.N.J. Apr. 3, 2014) ("Moreover, even assuming arguendo that the ALJ erred by not holding a hearing in person–the error would be harmless because, as explained below, the ALJ's decision is supported by substantial evidence in the record and Plaintiff's subjective complaints were rejected by the ALJ as contrary to the objective medical evidence.").

For all of these reasons, I find no merit in Plaintiff's complaint that his hearing was held by video teleconference.

## V. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Commissioner's final decision in this case be **AFFIRMED**.   I **FURTHER RECOMMEND** that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the

finding or conclusion.

      **RESPECTFULLY RECOMMENDED** in Orlando, Florida on November 24, 2015.

 

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record